UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

OJ COMMERCE LLC            Case No: 0:21cv62529
    Plaintiff
v.

MADDAMZ GROUP INC
    DBA SIMPLE LIVING PRODUCTS
    Defendant
_____/

## COMPLAINT

Plaintiff, OJ Commerce, LLC ("OJC" or "Plaintiff") hereby brings this action for damages and other relief against Defendant MADDAMZ GROUP INC DBA SIMPLE LIVING PRODUCTS ("Maddamz" or "Defendant") for violation of the Lanham Act, related state-law claims, and breach of contract, and states the following:

### PARTIES

1.    Plaintiff OJC is a Delaware limited liability company with its principal place of business in Broward County, Florida. OJC's single member resides in Florida. OJC is an online retailer which is engaged in interstate commerce, including via selling appliances and other consumer goods on the Amazon marketplace to customers throughout the United States, including in Florida and the Southern District of Florida.

2.    Defendant Maddamz is a California Corporation, with its principal place of business in Irvine, California. Maddamz is a wholesale manufacturer and distributor of household appliances throughout the United States, including in Florida and the Southern District of Florida.

### JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it is a federal action based on a violation of 15 U.S.C. § 1125, and this Court has

supplemental jurisdiction over the related Florida State claims, pursuant to 28 U.S.C § 1367 as they arise from the same case or controversy as the federal claims.

4. This Court separately has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Maddamz pursuant to a mandatory forum selection clause in an E-Commerce Vendor Agreement between OJC and Maddamz, subjecting Maddamz to exclusive jurisdiction in the State or Federal Courts in Broward County, Florida.

6. This Court also has personal jurisdiction over Maddamz pursuant to Fla. Stat. § 48.193, as it committed an intentional tortious act within this District, engaged in solicitation or service activities within this District, failed to perform acts required by the contract to be performed in this District, and entered into a contract subjecting it to personal jurisdiction within this District.

7. Venue is proper in this District pursuant to a mandatory forum selection clause in an E-Commerce Vendor Agreement between OJC and Maddamz, for exclusive venue in the State or Federal Courts in Broward County, Florida.

8. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**INTRODUCTION**

9. On September 16, 2021, OJC and Maddamz entered into an E-Commerce Vendor Agreement for Maddamz to fulfill OJC's drop ship orders on Maddamz's products. (the "Agreement"). The Agreement does not restrict OJC on how and where to sell its products, and has a 180-day notice requirement for its termination. A true and correct copy of the Agreement is hereby attached as **Exhibit A**.

10. Amazon is the largest online marketplace for consumer goods, and retailers compete for customers by providing competitive pricing, and quality services. Amazon allows multiple sellers to sell the same item, often at different prices and with different associated services, such as speed of delivery and/or return policy in the event of any dissatisfaction. Such fair and open competition among multiple sellers of the same product is conducive to a healthy marketplace, where the consumer is the ultimate beneficiary, getting the best price and highest level of service.

11. However, some products are sold on the Amazon marketplace exclusively by Amazon, in such instances there is no competition on the price, and it is sold at a higher price, to the detriment of the consumer.

12. Maddamz wants to eliminate retailers such as OJC from the Amazon marketplace, and ensure it is sold exclusively by Amazon, at a higher price. To accomplish that goal, Maddamz resorted to an illegal path of making malicious false accusations against OJC, and filing knowingly false claims with Amazon, claiming inaccurately that OJC was selling counterfeit goods, in an effort to remove OJC from the Amazon marketplace.

13. These counterfeit claims were blatantly malicious and were made in bad faith, **as Maddamz was the one actually fulfilling OJC's orders with its genuine products**, and therefore Maddamz knew full well that OJC's products were not counterfeit.

14. OJC is a local South Florida business, whose success heavily relies on selling its products online, including via the Amazon marketplace. Maddamz is well aware of Amazon's strict intellectual property policies, including its anti-counterfeiting policy. Precisely because those policies are strict, making false allegations to Amazon may have the devastating ramifications for those businesses against whom such false allegations are made, as Maddamz

knew. Indeed, a deliberately false claim to Amazon that a retailer is selling counterfeit products may ultimately lead to that competitor, such as OJC, being permanently barred from all access to the Amazon marketplace, including the ability to sell other products not even alleged to have been counterfeit. Even without such draconian measures being taken by Amazon, Amazon's policies, which generally take allegations of the sale of counterfeit products at face value, enable an unscrupulous actor like Maddamz to get a legitimate business like OJC falsely labeled in the Amazon marketplace as an alleged seller of counterfeit goods, which will predictably injure OJC's reputation in the marketplace and dissuade consumers from buying any goods (even those beyond the specific product alleged to be counterfeit) from OJC. Maddamz deliberately caused these harms to OJC by making intentional false statements in order to profit unfairly at OJC's expense.

## FACTS COMMON TO ALL COUNTS

15. OJC sells many consumer goods, including certain Maddamz home appliance products identified by Amazon Standard Identification Numbers ("ASIN") B0812CWD79, B01NAQOO5I, B01N31LOBJ, B01MR3OOGU, and B08KSK288H, (collectively, the "Appliance Products").

16. OJC obtains all of its Appliance Products inventory from authorized manufacturers and distributors, and sells only genuine and authentic Appliance Products.

17. One of the marketplaces through which OJC sells its Appliance Products is www.amazon.com, the Amazon marketplace website.

18. Defendant Maddamz is a wholesale manufacturer and distributor of the Appliance Products.

19. Amazon has established a strict anti-counterfeiting policy, whereby any product that is reported as counterfeit is immediately removed from the Amazon marketplace, and a

negative flag is added to the seller's account, as a counterfeit seller.

20. Thus, as predicable of Amazon's anti-counterfeiting policy, a seller targeted with claims of selling counterfeit merchandise is faced with consequences such as the seller's loss of selling privileges, and its funds from prior sales being withheld by Amazon.

21. While intended to protect consumers against purchasing counterfeit products, these Amazon policies unfortunately provide perverse incentives for unscrupulous distributors willing to make false accusations in order to gain an unfair advantage against legitimate retailers.

22. On or about October 23, 2021, Defendant filed five (5) knowingly false claims with Amazon against OJC, alleging that the Appliance Products OJC sells on the Amazon marketplace are counterfeit. These complaints were identified as Complaint Nos. 9098042111, 9097905351, 9097922211, 9097975651, and 9098030981. A true and correct copy of these complaints is attached hereto as **Exhibit B**. (the "Counterfeit Claims").

23. Maddamz's Counterfeit Claims are false, as OJC's Appliance Products are legitimate, authentic, and not counterfeit. **Maddamz knew without any doubt that the Counterfeit Claims were false when they made them, because Maddamz is actually the party that fulfills OJC's orders with Maddamz's own genuine products**.

24. Maddamz made these false Counterfeit Claims to Amazon with actual knowledge of their falsity and in bad faith, with the specific intention that Amazon act on it, pursuant to Amazon's policies which Maddamz was aware of, by restricting OJC's ability to sell products via the Amazon marketplace.

25. Immediately after the false Counterfeit Claims were filed, OJC sent a notice to Maddamz advising that its claims are false, and asked for an immediate retraction. A true and correct copy of the demand letter is hereby attached as **Exhibit C**. Maddamz has thus far refused

to fully retract its false accusations.

26. Instead of responding to the demand letter and retracting its false Counterfeit Claims, Maddamz doubled down and prematurely terminated its Agreement with OJC, and constructively stopped accepting any new orders from OJC, without providing the 180-day notice required by the Agreement.

27. As a result of Maddamz's knowingly false Counterfeit Claims, Amazon immediately removed OJC's Appliance Products from the Amazon marketplace, and flagged OJC as a counterfeit seller, thus putting OJC at a competitive disadvantage in its ability to sell any other products, including those not alleged to be counterfeit, via the Amazon marketplace.

28. Having removed OJC as a competitive seller of Appliance Products from the Amazon marketplace, Maddamz now hopes to sell the Appliance Products to consumers without competition at a higher price throughout the United States, including in the State of Florida and the Southern District of Florida, then they would otherwise be able to in a fair and competitive market undistorted by Maddamz's false Counterfeit Claims and the actions Amazon predictably took in reliance on those false Counterfeit Claims.

29. Because of Maddamz's knowledge of the strictness of Amazon's anti-counterfeiting policy, Maddamz made its false Counterfeit Claims knowing that there was a high probability that OJC would be damaged.  Indeed, Maddamz's Counterfeit Claims have put OJC at a significant risk that its selling privileges on the Amazon marketplace will be lost, and its funds withheld by Amazon.

30. Maddamz's false Counterfeit Claims has already caused lost sales and significant harm to OJC's business reputation and goodwill, as consumers and vendors alike refuse to do business with a counterfeit retailer, and is likely to cause significant additional harm in the future

until remedied.

31.     OJC retained the undersigned counsel and has agreed to pay their reasonable attorney's fees.

### COUNT I - Violation of the Lanham Act (15 U.S.C. § 1125)

32.     OJC repeats and realleges paragraphs 1 through 31, as it fully sets forth herein.

33.     Maddamz knowingly and willfully made a false statement of a material fact, by filing the Counterfeit Claims with Amazon, namely that OJC sold "counterfeit" and "inauthentic" Appliance Products.

34.     The Counterfeit Claims were made in order to eliminate competition and deprive consumers of the opportunity to purchase Appliance Products at a competitive price from OJC.

35.     Knowing of Amazon's policies and how it would initially respond to the Counterfeit Claims by taking it at face value, Maddamz manipulated Amazon in order to deprive all consumers using the Amazon marketplace of access to Appliance Products sold by OJC, as well as generally damaging OJC's reputation in that marketplace as a seller of any and all other products.

36.     The Counterfeit Claims actually deceived Amazon into believing that OJC's Appliance Products are counterfeit, as Amazon removed the Appliance Products from its marketplace. This predictable removal of OJC's Appliance Products as a result of Maddamz's false Counterfeit Claims also deceives consumers and vendors who then question OJC's reputation for it allegedly selling "counterfeit" products.

37.     Maddamz's actions were intended to affect, and did affect, interstate commerce, as the Amazon marketplace's consumers are spread across the entire United States, including but not limited to Florida and the Southern District of Florida.

38. Maddamz's false Counterfeit Claims actually caused monetary harm to OJC.

39. Maddamz's false Counterfeit Claims also caused and have the likelihood of causing irreparable harm, which monetary damages cannot remedy, to OJC, its business, and its reputation, and therefore Maddamz's actions should be permanently enjoined.

WHEREFORE, Plaintiff OJC seeks monetary damages, Maddamz's actual profits from its wrongful actions, the costs of the action, a declaration that this is an exceptional case, its reasonable attorney's fees, pursuant to 15 U.S.C. § 1117(a); and injunctive relief against Maddamz in the form of a retraction of its false Counterfeit Claims with Amazon, and a permanent injunction barring Maddamz from filing any future false claims concerning OJC, pursuant to 28 U.S.C. § 2201(a).

### COUNT II - Defamation

40. OJC repeats and realleges paragraphs 1 through 39, as it fully sets forth herein.

41. Maddamz disseminated false and defamatory Counterfeit Claims against OJC and its business reputation, namely that OJC sells "counterfeit" and "inauthentic" Appliance Products.

42. Such defamatory statements were made towards a third party, Amazon, without any privilege or other valid reason.

43. Maddamz made this knowingly defamatory statements of fact in order to manipulate Amazon's policies and with the intent and expectation that Amazon would as a result label OJC as a seller of counterfeits to all consumers throughout the United States (including the State of Florida and the Southern District of Florida) using the Amazon marketplace, whether the consumers were interested in purchasing an Appliance Product or purchasing any other product that OJC offers for sale via the Amazon marketplace.

44. Maddamz knowingly made these false statements with actual knowledge of their falsity or, at a minimum, reckless disregard for the truth.

45. Maddamz's publication of its Counterfeit Claims caused monetary harm to OJC.

46. As detailed above, Maddamz filed knowingly false Counterfeit Claims against OJC with Amazon, complaints which Maddamz knew were false and wrong because it was in fact the company supplying the supposedly "counterfeit" Maddamz Appliance Products to OJC in the first place. Maddamz knew of Amazon's strict anti-counterfeiting policy and also knew that there was a high likelihood that OJC would be injured and damaged by Maddamz's false Counterfeit Claims. Despite that actual knowledge, Maddamz intentionally pursued its filing of false Counterfeit Claims, which predictably resulted in injury and damages to OJC. And even when OJC confronted Maddamz about its intentional misconduct, Maddamz still refused to retract its false Counterfeit Claims. Maddamz's misconduct in filing knowingly false Counterfeit Claims with Amazon – and Maddamz's refusal to withdraw them – was also so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be knowingly and willfully defamed. Accordingly, OJC seeks punitive damages in excess of $1 Million against Maddamz for its defamation of OJC.

WHEREFORE, Plaintiff OJC seeks damages, special damages, consequential damages, punitive damages, together with court costs, interest, and any other relief this Court deems just and proper.

### COUNT III - Tortious Interference with Business Relationship

47. OJC repeats and realleges paragraphs 1 through 46, as it fully sets forth herein.

48. OJC has a business relationship with Amazon, whereby OJC lists its products on the Amazon marketplace for sale to the public at large, in return for a commission paid to Amazon.

49. Maddamz knew of the business relationship, and specifically targeted that business relationship when they opened false Counterfeit Claims with Amazon against OJC.

50. Maddamz's actions caused a suspension and/or termination of OJC's selling of the Appliance Products on the Amazon marketplace, caused a counterfeit flag to be put on OJC's Amazon account, and has the high likelihood of causing Amazon to further penalize OJC based on Maddamz's false Counterfeit Claims.

51. Maddamz intentionally and unjustly interfered with OJC's Amazon business relationship for Maddamz's personal gain, in order to gain an unfair competitive advantage on the Amazon marketplace. As such, Maddamz's interference was done without justification or privilege.

52. Maddamz's tortious interference caused monetary harm to OJC.

53. As detailed above, Maddamz filed knowingly false Counterfeit Claims against OJC with Amazon, complaints which Maddamz knew were false and wrong because it was in fact the company supplying the supposedly "counterfeit" Maddamz Appliance Products to OJC in the first place. Maddamz knew of Amazon's strict anti-counterfeiting policy and also knew that there was a high likelihood that OJC would be injured and damaged by Maddamz's false Counterfeit Claims. Despite that actual knowledge, Maddamz intentionally pursued its filing of false Counterfeit Claims, which predictably resulted in injury and damages to OJC. And even when OJC confronted Maddamz about its intentional misconduct, Maddamz still refused to retract its false Counterfeit Claims. Maddamz's misconduct in filing knowingly false Counterfeit Claims with Amazon – and Maddamz's refusal to withdraw them – was also so reckless or wanting in care that it constituted the conscious disregard or indifference to OJC's right not to be knowingly and willfully defamed. Accordingly, OJC seeks punitive damages in excess of $1 Million against Maddamz for its tortious interference with OJC's business relationship with Amazon.

WHEREFORE, Plaintiff OJC seeks damages, special damages, consequential damages,

punitive damages, together with court costs, interest, and any other relief this Court deems just and proper.

**COUNT IV - Florida Deceptive and Unfair Trade Practices (Fla. Stat. § 501.201 et seq.)**

54. OJC repeats and realleges paragraphs 1 through 53, as it fully sets forth herein.

55. Maddamz's false Counterfeit Claims against OJC with Amazon is an unfair trade practice.

56. Maddamz's false Counterfeit Claims were made and performed in the course of trade or commerce.

57. Maddamz's unfair trade practice caused monetary harm and irreparable harm to OJC.

WHEREFORE, Plaintiff OJC seeks monetary damages, the costs of the action, and reasonable attorney's fees, injunctive relief against Maddamz in the form of a retraction of its false Counterfeit Claims with Amazon, and a permanent injunction barring Maddamz from filing any future false claims concerning OJC, pursuant to Fla. Stat. § 501.211.

**COUNT V - Breach of Contract**

58. OJC repeats and realleges paragraphs 1 through 57, as it fully sets forth herein.

59. As a direct result of the Agreement with Maddamz, OJC undertook significant investments in preparing Maddamz's appliance products for sale, including product development costs, marketing costs, and technological integration costs.

60. OJC entered into the Agreement with Maddamz in order to obtain the full benefit of its bargain, that is to sell Maddamz's appliance products to recover its investment, and turn a profit from such sales.

61. Pursuant to the Agreement, Maddamz may only terminate its business relationship

with OJC upon providing 180-days advance notice.

62. On December 2, 2021, Maddamz breached the Agreement when it terminated its business relationship with OJC, and refused to further fulfill OJC's orders.

63. Maddamz's breach of the Agreement caused monetary harm to OJC, and denied OJC the opportunity to obtain the full benefit of its bargain.

WHEREFORE, Plaintiff OJC seeks damages, special damages, consequential damages, together with court costs, interest, and any other relief this Court deems just and proper.

## COUNT VI - Declaratory Judgment / Injunctive Relief

64. OJC repeats and realleges paragraphs 1 through 63, as it fully sets forth herein.

65. An actual and justiciable controversy exists between Maddamz and OJC related to the falsity of Maddamz's Counterfeit Claims.

66. The Court, pursuant to Fed. R. Civ. P. 57, 28 U.S.C. § 2201, and Fla. Stat. § 86.011, should declare that Maddamz's Counterfeit Claims were false.

67. Maddamz should also be permanently enjoined from making false Counterfeit Claims against OJC, as further complaints would irreparably harm or have the likelihood of further irreparably harming OJC, its business, good will, and reputation.

WHEREFORE, Plaintiff OJC seeks a declaration that Maddamz's Counterfeit Claims were false, the costs of the action, and reasonable attorney's fees, injunctive relief against Maddamz in the form of a retraction of its false Counterfeit Claims with Amazon, and a permanent injunction barring Maddamz from filing any future false claims concerning OJC.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES TRIABLE BY RIGHT**

Dated: December 20, 2021.

                                                  Respectfully submitted,

                                                  Shlomo Y. Hecht, P.A.
                                                  3076 N Commerce Parkway
                                                  Miramar, FL 33025
                                                  Phone: 954-861-0025

                                                  By: /s/ Shlomo Y Hecht
                                                  Florida State Bar No.: 127144
                                                  Email: sam@hechtlawpa.com
                                                  Attorney for Plaintiff